[Civ. No. 1899. Fifth Dist. Mar. 23, 1973.]

BELMONT INDUSTRIES, INC., Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
VIKING DRAFTING, INC., Real Party in Interest.

## COUNSEL

McCaw & Barnum and June L. Barnum for Petitioner.

No appearance for Respondent.

James & James and Stewart W. James for Real Party in Interest.

## OPINION

**FRANSON, J.**—Petitioner seeks a writ of mandate directing respondent to enter its order quashing service of summons for lack of jurisdiction over petitioner.

 ██ ██ Viewing the affidavits in a light most favorable to real party in interest (hereinafter "Viking")[1] the following is established:

Petitioner is a Pennsylvania corporation with its principal offices at Philadelphia, and is engaged in the fabrication and erection of structural steel framework for construction projects on the East Coast of the United States. It is not authorized to do business in California; it has never had an office or agent in this state and it has never sold or purchased any goods here. Other than as hereinafter described, petitioner has never engaged in any activity in California. It does not own, use or possess property here.

---

[1]Where the factual contents of the affidavits filed in support of the motion conflict with those opposing it, it will be presumed that the trial court resolved such conflicts in support of its order. (*Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.,* 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320]; *Detsch & Co.* v. *Calbar, Inc.,* 228 Cal.App.2d 556, 561-563 [39 Cal.Rptr. 626].)

Viking is a California corporation engaged in drafting services, with its principal place of business at Modesto.

In August 1969 Bechtel Corporation, operating out of its Gaithersburg, Maryland office, was the general contractor for the Baltimore Gas & Electric Company on a project to be constructed at Calvert Cliffs, Maryland. Bechtel accepted petitioner's bid for steel framework on the project; thereafter petitioner telephoned Viking in regard to submitting a bid for a subcontract on drafting work. At Viking's request, petitioner mailed to Viking a set of preliminary drawings, and Viking mailed a written bid to petitioner. Thereafter, at petitioner's request, Viking sent a representative to Pennsylvania to confer about the job; subsequently petitioner mailed to Viking a written "purchase order" confirming the award of the contract to Viking.[2]

After the project was completed, a dispute arose over whether Viking was entitled to some $18,899.85 for extra work claimed to have been done by it on the contract at the request of the general contractor. In order to settle the dispute, petitioner and Viking, at Philadelphia, by written agreement dated February 4, 1971, agreed that petitioner would assist Viking in collecting the money from the owner and/or the general contractor.

On May 24, 1972, Viking filed an action in respondent court against petitioner for $18,899.85. The first three causes of action are in common count for the services rendered, and the fourth cause of action is for breach of the written contract entered into on February 4 at Philadelphia and alleges that petitioner failed to assist Viking in collecting for

---

[2]It appears that during the years 1968 through 1971 petitioner contracted with Viking for drafting services on 21 other jobs located outside of California. The general procedure regarding these contracts was the same as for the contract in the instant case; after receiving Viking's bid, and if found to be acceptable, petitioner would execute a purchase order at Philadelphia and mail it to Viking. On four or five occasions petitioner sent an employee to Viking's office to discuss jobs in progress. On one occasion it appears that petitioner's employee negotiated with Viking for drafting services on a "Three Mile Island" project; later the project was cancelled and Viking was paid for its preliminary services in the matter. Petitioner's affidavit indicates that while its representative may have discussed the project with Viking at the latter's office, he had no authority to consummate the contract as the terms had to be approved by petitioner at Philadelphia and confirmed by a purchase order.

During the same period of time petitioner contracted with several other drafting firms in California for similar services in connection with jobs on the East Coast and on various occasions sent representatives to discuss the performance of the contracts with these firms.

the "extras."[3] A copy of a summons and complaint was served on petitioner's treasurer in Pennsylvania. Petitioner filed a motion to quash service of summons on the ground of respondent's lack of personal jurisdiction over petitioner. After respondent denied the motion, petitioner sought relief in this court pursuant to Code of Civil Procedure section 418.10, subdivision (c).

■ This case presents the question whether an out-of-state purchaser of services from a California resident by way of a contract negotiated through interstate communications, consummated outside of California, is subject to the judicial jurisdiction of California in a suit to enforce payment for the services. We hold that it is not.

Code of Civil Procedure section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

As noted in *Michigan National Bank* v. *Superior Court*, 23 Cal.App.3d 1, at page 6 [99 Cal.Rptr. 823]: "Section 410.10 of the Code of Civil Procedure . . . manifests an intent to exercise the broadest possible jurisdiction. The constitutional perimeters of this jurisdiction are found in the decisions of the United States Supreme Court."

In *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 102, 66 S.Ct. 154, 158, 161 A.L.R. 1057], it was held: ". . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]

". . . An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

---

[3]Assumption of jurisdiction with respect to the fourth cause of action, standing alone, clearly would seem to be inappropriate. The contract calls for petitioner to assist Viking in collecting moneys assertedly due from corporations on the East Coast. The contract was entered into at Philadelphia and was to be performed by petitioner in either Pennsylvania or Maryland. The California connection with the contract appears nonexistent. However, for the purpose of this opinion we will treat the fourth cause of action as arising out of the 1969 contract for drafting services.

The outer limits beyond which a state may not go in subjecting a non-resident to its jurisdiction have been set in *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], where it is stated: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, *but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State,* thus invoking the benefits and protections of its laws." (Italics added.) 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298].)

■ "Minimum contact" for due process purposes requires more than a "foot-fall" within the state (*Erlanger Mills* v. *Cohoes Fibre Mills,* 239 F.2d 502, 509); it requires at the very least an act by the defendant which produces an effect within the state so as to make the exercise of jurisdiction *reasonable. (Internat. Shoe Co.* v. *Washington, supra; McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; *Hanson* v. *Denckla, supra;* Rest. 2d Conflicts of Law, § 50.)

■ In deciding whether jurisdiction reasonably may be assumed we must analyze the nature and quality of petitioner's activities in relation to the state. (*Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 860-862 [323 P.2d 437].) This requires a consideration of the following criteria: the interest of the state in providing a forum for its resident and in regulating the business involved (see *McGee* v. *International Life Ins. Co., supra; Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1]); the relative availability of evidence and the burden of defense and prosecution in one place rather than another (*Internat. Shoe Co.* v. *Washington, supra; Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal.2d at pp. 861-862); the ease of access to an alternative forum (*Travelers Health Assn.* v. *Virginia* (1950) 339 U.S. 643, 647-648 [94 L.Ed. 1154, 1160-1161, 70 S.Ct. 927]; *American Continental Import Agency* v. *Superior Court,* 216 Cal.App.2d 317 [30 Cal. Rptr. 654]; *Beirut Universal Bank* v. *Superior Court,* 268 Cal.App.2d 832 [74 Cal.Rptr. 333]); the avoidance of multiplicity of suits and conflicting adjudications (*Henry R. Jahn & Son* v. *Superior Court, supra*); and the extent to which the cause of action arose out of the defendant's activities in the forum state (*Internat. Shoe Co.* v. *Washington, supra; McGee* v. *International Life Ins. Co., supra; Hanson* v. *Denckla, supra; Henry R. Jahn & Son* v. *Superior Court, supra.*)

In *Henry R. Jahn & Son* v. *Superior Court, supra,* it was held that a foreign corporation's regular purchase of goods in this state from a California resident under an exclusive right to sell agreement subjected it to suit in California on causes of action arising out of a breach of this relationship. The court noted that the defendant took title to the goods in this state, that it directed its agent how and where to ship them, that after it ceased doing business with the plaintiff it entered into a similar course of business dealings with another defendant, a resident partnership. It was also noted that the causes of action grew directly out of the corporation's relationship with the plaintiff and the defendant partnership in this state and if the action were filed in the foreign jurisdiction two actions, rather than one, would be needed because of the resident partnership defendant. (49 Cal.2d at p. 862.)

In *American Continental Import Agency* v. *Superior Court, supra,* it was held that California had jurisdiction in a suit by a resident plaintiff against a German corporation and several domestic corporations for payment for aircraft parts purchased on a systematic and substantial basis by orders mailed from Germany. While this case is somewhat similar to the case at bench in that it involved the purchase of California goods by a foreign corporation, it is distinguishable in that on four occasions the foreign corporation had sent one of its directors to California to expedite the sales agreements which gave rise to the litigation. In addition, the court noted: "Aside from the problem of obtaining jurisdiction over all of the parties in a German court, inasmuch as most of the relevant facts with respect to the present controversy have their origin in California the burden on the plaintiff and the defendants, other than [petitioner], of prosecuting or defending in Germany would far outweigh the burden on [petitioner] of defending here." (216 Cal.App.2d at p. 323.)

In *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d 610, foreign purchasers of products from a California resident were held not to be subject to suit in California despite substantial purchases of phonograph records by out-of-state orders accepted in California. The court stated, at page 619: "Respondents conducted no local activities. Their activities were out-of-state, and, at most consisted of the out-of-state placement or receiving of telephone calls, and the mailing of orders. Though such was apparently frequent in some instances, this is not activity within the state, but outside of it, and does not constitute that quality and nature of activity that would make it 'fair' to require any respondent to defend itself here."

In the case at bench the substance of petitioner's activities with reference to this state was the purchase of drafting services from a resident corporation, by purchase order executed in Pennsylvania. While it was undoubtedly contemplated that Viking would perform the services in California it was not required by the terms of the contract. The place of Viking's performance was of no concern to petitioner so long as the drawings were prepared on time and in accord with the original plans and specifications. Petitioner's only purpose in entering into the contract was to obtain final drawings at its plant in Pennsylvania, which could be utilized by it in fabricating the steel framework for the Calvert Cliffs job. Viking's performance in California cannot give jurisdiction over petitioner; it is petitioner's activity that must provide the basis for jurisdiction. We find no purposeful activity by petitioner from which it can be inferred that it intended to conduct business in California.[4]

Although it may be argued that in every instance a state has some interest in providing its residents with a forum for litigation, we are unable to say that California has any substantial interest in providing Viking with a forum to recover payment for its drafting services. (See *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d at p. 619.) Viking is a sophisticated business entity that has dealt at arm's length with petitioner on many occasions. Viking's officers have made repeated trips to Pennsylvania for the purpose of negotiating and conferring with petitioner on drafting work. The litigation involves no public interest beyond the rights of the parties. (Cf. *McGee* v. *International Life Ins. Co., supra.*)

A Pennsylvania forum is easily available to Viking; there is no hardship if the California forum is unavailable to it. (Cf. *McGee* v. *Interna-*

---

[4] Viking contends that its similar contracts with petitioner in past years, as well as petitioner's contracts with other California drafting firms and the occasional acts of petitioner in sending employees to California to confer on the progress of a contract, elevate petitioner's relationship with California to a constitutionally permissible level for the exercise of jurisdiction. However, in evaluating petitioner's activities we must look to the nature and quality of the activity, rather than its quantity. (*Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 832 [17 Cal.Rptr. 150, 366 P.2d 502]; *Beirut Universal Bank* v. *Superior Court, supra,* 268 Cal.App.2d at p. 839; *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d at pp. 614-615.) Irrespective of the number of contracts, the substance of petitioner's activities within this state has been the same—the purchase of services from residents by contracts executed outside of the state. The occasional act of sending an employee into the state to expedite the services adds nothing to the relationship between petitioner and the state. (Cf. *American Continental Import Agency* v. *Superior Court, supra,* 216 Cal. App.2d at p. 322.) We note that petitioner sent no representatives into California in connection with the contract giving rise to the present litigation.

*tional Life Ins. Co., supra; American Continental Import Agency* v. *Superior Court, supra.*)

There would be no problem of multiplicity of suits were the action to be filed in Pennsylvania. (Cf. *American Continental Import Agency* v. *Superior Court, supra.*)

Because the jobsite, the owner, the offices of the general contractor and of petitioner, the original plans and specifications, and the completed drawings rendered by Viking are located in either Pennsylvania or Maryland, the availability of physical evidence and witnesses makes California an inconvenient forum in which to try the lawsuit. (Cf. *Internat. Shoe Co.* v. *Washington, supra; McGee* v. *International Life Ins. Co., supra; Henry R. Jahn & Son* v. *Superior Court, supra.*) In weighing the burden of defending in California against the burden of prosecuting the action in Pennsylvania, the scales effortlessly tip in favor of Pennsylvania as the forum for trial.

Another compelling reason against the assumption of jurisdiction by California under the circumstances here presented is the adverse effect this would have on interstate commerce. The principle is articulated in *Conn* v. *Whitmore*, 9 Utah 2d 250 [342 P.2d 871, 874-875]: "Brief reflection will bring to mind difficulties to be encountered if the ordering of merchandise in a foreign state by mail and taking delivery through a designated carrier, whether private or common, is to be deemed 'doing business' in a foreign state, which will draw one into the orbit of the jurisdiction of its courts. This would for practical purposes obliterate any protection one might have from being compelled to go to a foreign jurisdiction to defend a lawsuit. A person contemplating business in another state would have only two alternatives: either subject himself to the jurisdiction of the foreign court if any dispute arises, or refrain from doing such business."

To hold that a foreign buyer has subjected itself to the judicial jurisdiction of California by the simple act of purchasing services from a California resident would hinder interstate business contrary to the best economic interest of California.

Let the peremptory writ of mandate issue as prayed.

Brown (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied April 13, 1973, and the petition of the real party in interest for a hearing by the Supreme Court was denied May 23, 1973. Mosk, J., was of the opinion that the petition should be granted.