**ROSKELLEY & CO., a corporation, Plaintiff and Respondent,**

v.

**LERCO, INC., a Kentucky Corporation, Defendant and Appellant.**

No. 15987.

Supreme Court of Utah.

April 11, 1980.

John L. McCoy, Salt Lake City, for defendant and appellant.

George S. Diumenti, Bountiful, for plaintiff and respondent.

WILKINS, Justice:

Plaintiff brought action against defendant, a Kentucky corporation, alleging breach of an oral contract to pay a commission or "finder's fee," to plaintiff for its services in connection with the sale of goods by defendant for use in this State by a Utah corporation.

Defendant appeared specially and moved to quash service and dismiss the complaint for lack of jurisdiction over it.[1] From the order of the District Court, Salt Lake County, denying defendant's motion, and ordering it to answer the complaint within ten days, defendant appeals. All statutory references are to Utah Code Annotated, 1953, as amended.

For the purposes of its motions, defendant filed an affidavit reciting the following facts: (1) The parties had no contract for the payment of commissions. (2) Prior to July, 1975, M. L. Roskelley, plaintiff's representative, telephoned defendant in Kentucky inquiring about the possibility of acting as broker for defendant in Utah, but declined defendant's terms for such a contract. (3) Defendant sold equipment to U. S. Steel Credit Corporation, which in turn leased the equipment to Utah American Steel Co. (4) In June, 1975, plaintiff accompanied officers of Utah American Steel Co.

---

1. Defendant also moved to set aside the default judgment which had been entered against it, and said motion was granted.

to defendant's plant in Kentucky for the purpose of discussing the specifications of the equipment, but at that time there was no discussion concerning payment of any commission to plaintiff. (5) Defendant sent its employees to Utah following July 16, 1975, to supervise the installation and adjustment of the equipment at the plant of Utah American Steel Co., and for no other purposes. These facts were not controverted by plaintiff by counter-affidavit or otherwise.

Defendant contends on appeal that the State of Utah does not have in personam jurisdiction over defendant under Section 78–27–24[2] or otherwise. We agree that this record does not show that defendant was doing business in this State to such an extent that our Courts would have general jurisdiction,[3] and that if the suit can be maintained here, plaintiff must show that his cause arose out of one or more of defendant's contacts with this State as set forth in Section 78–27–24.

Plaintiff argues that the "minimal contacts" test of *International Shoe*[4] is satisfied, as defendant transacted business in this State, contracted to supply goods in this State, and defendant's employees were physically present in this State.

But we are not here concerned with defendant's contract for the sale of goods to U.S. Steel Credit Corporation, nor with the installation of the equipment at the Utah American Steel plant, and plaintiff's claim does not arise out of those activities. Plaintiff's alleged contract with defendant is collateral to its activities relating to the sale of equipment to U.S. Steel Corporation, and such a contract between plaintiff and defendant, would portray plaintiff's, and not defendant's, services and activities within this State.

We note that the dissent would resolve the question of jurisdiction on the basis of the allegation in plaintiff's complaint that an oral contract was entered into, regardless of defendant's sworn statement of specific facts denying such a contract. The dissent views defendant's statement that it made no commitment to plaintiff regarding a commission as vague and susceptible of many meanings. We view defendant's affidavit as completely contradicting plaintiff's allegation that a contract exists.

Nevertheless, it is the jurisdictional facts, and not whether plaintiff has stated a claim upon which relief may be granted, which concern us here. The statement concerning jurisdiction in plaintiff's complaint is its allegation that defendant "does business within the State of Utah, and has significant contacts with the State of Utah." Significantly, when jurisdiction is drawn into controversy, defendant's affidavit alleges that defendant is not qualified to do business generally in Utah; that the contacts defendant had with plaintiff were initiated by plaintiff; that defendant met plaintiff in Kentucky, not in Utah; that defendant's contract for the sale of equipment was with U.S. Steel Credit Corporation, and not with Utah American Steel; that defendant entered the State of Utah only for the purpose of supervising the installation of that equipment; that plaintiff did not at any time perform any services with regard to such installation—in short, that defendant had no purposeful contacts with the State of Utah which would support a finding of jurisdiction for the purpose of litigating this *contract for commissions*. These facts remain unanswered by plaintiff, and we believe fatally so.

2. Section 78–27–24 provides in pertinent part:

Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business within this state;

(2) Contracting to supply services or goods in this state; . . .

3. See *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp.*, Utah, 578 P.2d 850 at p. 853, footnote 6, (1978).

4. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The dissent contends that plaintiff, by the allegations in its complaint, has established prima facie jurisdiction and the burden has shifted to defendant to prove lack of jurisdiction. But when jurisdiction is challenged, plaintiff cannot solely rely on allegations of jurisdiction in its complaint in the face of an affidavit by defendant which specifically contradicts those general allegations.

■ We do not consider the procedure proposed by the dissent to be fair or reasonable, in view of the fact that one of the primary ingredients of the due process inquiry into personal jurisdiction over a nonresident is whether it is more fair and just to require defendant to undertake the added costs and inconvenience of litigating in our courts than it is to require plaintiff to undertake those costs and that inconvenience by pursuing defendant in the state in which defendant resides. Here, the District Court has no power to hear this case on the merits if the facts are as alleged in defendant's affidavit because the Court has no jurisdiction.

The Colorado case, *Texair Flyers, Inc. v. District Court, First Judicial District*, 180 Colo. 432, 506 P.2d 367 (1970), cited in the dissent, has not been followed in any other jurisdiction. And none of the federal cases cited by the Colorado Court in that case, go so far as to say that only the allegations of the complaint should be considered, so that a defendant is entirely precluded from challenging those allegations at the threshold. Though the federal cases generally hold that plaintiff should not be required to prove all of the merits of his case in a hearing designed for the purpose of determining jurisdiction, a proposition with which we agree, those courts based their determinations on all the pleadings, including affidavits of the parties, and in some of the cases, depositions, answers to interrogatories, and requests for admissions.

Thus, in *Surpitski v. Hughes Keenan Corp.*, 362 F.2d 254 (1st Cir. 1966), the District Court had allowed plaintiff 48 hours to file a motion or counteraffidavit in response to defendant's affidavit and dismissed the complaint when plaintiff's response was to move for further discovery. The Circuit Court reversed and remanded the case to allow plaintiff further discovery for the purpose of determining jurisdiction. And the Court in *Alosio v. Iranian Shipping Lines*, 307 F.Supp. 1117 (W.D.Pa.1970) stated:

At this stage, however, where it is enough for plaintiffs to show "threshold jurisdiction" sufficient to demonstrate the fairness of allowing them to continue the suit here, *United States v. Montreal Co., supra*, 358 F.2d [239] at 242–243, the affidavits amply accomplish the demonstration in their favor. *This conclusion could not be reached, of course if the problem were one of "weighing" affidavits on the two sides containing square contradictions of each other. It can be and is reached because the sworn allegations in plaintiffs' affidavits of concrete, specific and plainly material facts are in significant respects simply ignored by the ostensibly responsive affidavits.* In motion papers that reflect intensive, detailed, expert lawyering on both sides, striking omissions of this sort cannot be overlooked or denied their patent importance. [emphasis added]

■ We think that a mechanism for determining jurisdiction *prior* to a trial on the merits, analogous to the mechanism available for summary judgment, Rule 56(e), comports with fairness and due process, and hence that allegations in a complaint should not be able to withstand the force of specific allegations of fact in affidavit form which latter allegations are not challenged. In this case, allegations of specific and material facts in defendant's affidavit are unanswered by plaintiff.

We further believe that the broad construction the dissent would give the term "arose from" is unwarranted, and is unsupported by the cases cited therein. This Court recently held, in the case of *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp., supra*, note 3, that there are significant distinctions between the "doing business" concept and the "minimal contacts" test of

*International Shoe.* The older "doing business" concept requires a plaintiff to show that defendant has conducted substantial and continuous business activity within the forum state. Once that is shown, defendant is subject to litigation related or unrelated to that business, as he is a "pseudoresident." But if the action is brought pursuant to the long-arm statute because defendant is not doing substantial business in the forum state, plaintiff must show that his claim arises out of some contact defendant has with the forum state, some action undertaken by defendant by which it can be shown that defendant has "purposefully availed himself of the privilege of conducting activities within the forum state." [5] And it does not here assist the plaintiff to show the contacts defendant has with the forum, if the specific litigation at bar does not *arise out of* any of those contacts. The dissent's analysis does not consider the distinction between general and specific jurisdiction.

*Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), concerned quasi in rem jurisdiction based on property located in the forum, and *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), concerned marital relations issues. Neither case is illuminative in discussing the distinctions between "doing business" and litigation "arising out of" defendant's "transaction of any business in the forum state." [6]

In *Koplin v. Thomas, Haab and Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646 (1966), the Court found that defendant had more than minimal contacts; that it was doing business in the forum State, and had even registered with the Secretary of State to do business in the State. Hence the Illinois *long-arm statute* was not applicable.

The case of *Volkswagen Insurance Co. v. Whittington*, 58 Ill.App.3d 621, 16 Ill.Dec. 179, 374 N.E.2d 954, (1978) is, we believe, directly contrary to the point for which the

dissent cites it, for there the Court reversed the lower Court's denial of third-party defendants' motion to dismiss the complaint against them, as the litigation, which concerned an automobile collision, did not *arise out of* the business those defendants had previously conducted in the forum State.

It is extremely important to consider the impact of *Hanson v. Denckla, supra,* note 5, in actions brought pursuant to the long-arm statute, for there the United States Supreme Court held that State Courts do not have the *power* to take jurisdiction over non-resident defendants unless the litigation is related to acts of the defendant by which it "purposefully avails itself of the privilege of conducting activities within the forum State . . . ." A close scrutiny of *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), *International Shoe v. Washington, supra, Cohan v. Municipal Leasing Systems, Inc.,* 379 F.Supp. 1022 (D.C.Ill. 1974), *Waukesha Bldg. Corp. v. Johnson, et al.,* 246 F.Supp. 183 (D.C.Ark.1965), *Columbia Metal Culvert Co., Inc. v. Kaiser Industries, Corp.,* 526 F.2d 724 (3rd Cir. 1975), and *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972), all cited in the dissent, reveals that the *Hanson v. Denckla* test was discussed and met, for in those cases each defendant had purposefully conducted activities in the forum State and the specific litigation arose directly out of those activities.

In *Cornelison v. Chaney,* 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), the California Court came to a conclusion opposite that of the Illinois Court in *Volkswagen Insurance Co. v. Whittington, supra,* on similar facts. In *Cornelison,* defendant, a truck driver, was a resident of Nebraska. Plaintiff, a California resident, brought a wrongful death action for the death of her husband which occurred in a collision between an automobile driven by her husband

**5.** *Hanson v. Denckla,* 357 U.S. 235, at 253, 78 S.Ct. 1228, at 1240, 2 L.Ed.2d 1283 (1958).

**6.** Our statute provides for a marital relations "contact" in § 78–27–24(6), and a real property

contact in subsection (4). We are concerned, here, with interpreting subsections (1) and (2) of that statute.

and defendant's truck, in the State of Nevada. The trucker had entered the State of California twice a month for seven years for the purpose of delivering goods and picking up other goods for delivery elsewhere, and was at the time of the collision, en route to California. Justice Mosk, speaking for a majority of four of the seven Justices found jurisdiction on the very tenuous ground that "The accident arose out of the driving of the truck, the very activity which was the essential basis of defendant's contacts with this state." [127 Cal.Rptr. at 356, 545 P.2d at 268] Justice Clark, in his dissent, with which the other two Justices concurred, pointed out that defendant's activities in the State of California would be relevant in determining limited jurisdiction in a cause of action alleging defendant's fraud in dealing with the local manufacturers, whom he served, but simply is not relevant to an action alleging negligent driving in Nevada. [127 Cal.Rptr. 352, 545 P.2d at 270, footnote 1] We would agree with the dissent in that case.

Here, defendant's purposeful activities within this State consisted of its sale of equipment ultimately destined for installation in this State, and its entry into this State for the purpose of overseeing the installation of that equipment. These contacts would be sufficient for the establishment of limited jurisdiction if this litigation concerned an action for breach of warranty or negligence in installing the equipment, brought by Utah American Steel or U.S. Steel Credit Corporation, but this plaintiff cannot avail himself of such contacts for the purpose of his claim on an entirely different contract. To do so he must show that this State has general jurisdiction; to wit, the defendant has conducted substantial and continuous business in this State. Plaintiff has shown no purposeful activity on the part of defendant within this State by which it could be said that defendant knew or should have known that it was subjecting itself to the jurisdiction of our Courts, for the purposes of this alleged contract for commissions. Even assuming a contract for commissions was entered into, negotiations of the terms of that contract could have been undertaken only by way of the long distance telephone call between plaintiff and defendant's president, which was *initiated by plaintiff*, and a meeting in the State of Kentucky, not Utah, at which time defendant swears such a contract was not discussed. If we accept defendant's statement in its affidavit as true, as we must, since it is uncontroverted by plaintiff, defendant negotiated a sale of the equipment in question to U.S. Steel Credit Corporation, and did not know at that time that the equipment would be installed in Utah. Where are the purposeful acts on the part of defendant by which it could be said that it subjected itself to the jurisdiction of Utah for the purpose of litigating this alleged contract?

Lastly, the dissent assumes facts not supported by the record when it relates " . . . the witnesses to this alleged contract for commission are in large part going to be found within this state."

In our view of the facts as discussed above, most of the witnesses will be found in Kentucky. Nevertheless, there is in the record, no statement or other indication by either party as to where the witnesses are located.

■ In considering limited jurisdiction under the long-arm statute, we tend to lose sight of the fact that the original rule, prior to *International Shoe*, was that a plaintiff, who has the choice of whether or not to bring the action, should not also be extended carte blanche in choosing the forum, for he thereby subjects the defendant to costly litigation which might not be warranted by the amount in controversy, thus possibly forcing the defendant to default because he cannot afford to defend. The great significance of *International Shoe* lies in its recognition of the fact that plaintiffs, also, are often left without remedy, in this age of increased interstate travel and commerce, when they are damaged by a non-resident and cannot afford to pursue an action in a foreign jurisdiction. Thus the economic realities of litigation must always be taken into consideration in deciding whether a

particular forum is convenient to the parties. In *Cornelison, supra,* for example, the majority of the Court held that a California forum was equally convenient to a Nebraska defendant as a Nevada forum would be, while the dissenting opinion pointed out that it was more costly to bring Nevada witnesses to California.

In this respect, it is interesting to note that the California Court of Appeal, Fifth District, in the case of *Belmont Industries, Inc. v. Superior Court of Stanislaus County,* 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (1973), *balanced* the costs and conveniences of the parties and weighted that balance in favor of the defendant. In that case, Viking Drafting, Inc., the real party in interest, brought an action to recover for its services in drafting plans pursuant to a contract with a Pennsylvania defendant for construction work in the State of Maryland. The Court found that the only contact defendant had with the State of California was that the plaintiff's services were performed in that State. That was an insufficient contact, the Court said, as the defendant had not purposefully sought the protection of the laws of California. But the Court further found Viking to be a sophisticated business entity which had dealt at arm's length with defendant on many occasions and had made "repeated trips to Pennsylvania for the purpose of negotiating and conferring with petitioner [defendant] on drafting work." [107 Cal.Rptr. at 242.] This being the case, the Court held that a Pennsylvania forum was as easily available to Viking as a California forum, and there would be no hardship to the plaintiff, Viking, if the California forum were not available to it.

Similarly, here, plaintiff has found the time and money to meet with defendant in the State of Kentucky, and it does not appear that it would be a hardship to plaintiff if he is also required to seek his remedy in that State.

■ We are not persuaded that it would comport with the requirements of due process owed defendant under the Fourteenth Amendment of the United States Constitution to require defendant to defend this action in our Courts. And we do not find that defendant has submitted itself to this jurisdiction for the purposes of this action, by any activities outlined in Section 78–27–24.

Reversed, and remanded to the District Court of Salt Lake County for entry of its order dismissing plaintiff's complaint. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, and HALL, JJ., concur.

STEWART, Justice (dissenting):

I respectfully dissent. In my view the majority decides the jurisdictional issue by, in effect, deciding the substantive issue of the existence of the alleged contract. I think it is inappropriate to decide the merits of a case on a motion to dismiss for lack of jurisdiction.

Plaintiff alleged in his complaint that the defendant "does business" and has "significant contacts" in Utah and that the cause of action arose from business transacted by the defendant within the state. According to the complaint, on or about June 9, 1975, the plaintiff and defendant entered into an oral contract under which defendant was to pay a commission in the amount of $8,474.90 as compensation for its sale of certain machinery manufactured by defendant to Utah American Steel. Plaintiff further alleged that it had performed its obligations under the contract and that the defendant refused to pay the commission.

The defendant moved to quash the service of process, supporting the motion with an affidavit in which its president, Jensen, denied that there was "any commitment ever made to Roskelley & Co., or its representatives regarding any commission." Jensen admitted having been contacted by a representative of the plaintiff to negotiate a commission contract "prior to July, 1975," but averred that the representative had declined defendant's terms. Jensen further stated that Lerco, Inc., sold machinery to U. S. Steel Credit Corporation, which

was leased to Utah American Steel,[1] that Utah American Steel negotiated the terms and specifications directly with the defendant, that officers of Utah American Steel and a representative of the plaintiff traveled to Kentucky on June 11, 1975, "to negotiate the purchase" of the equipment, and that the contract for the purchase was signed on or about July 16, 1975. The defendant sent its corporate president to Utah American Steel's plant in Utah in June or July, 1975, and sent other employees to Utah on one or more occasions after the contract was signed to supervise "installation and adjustment" of the machinery. The plaintiff filed no counteraffidavit. After hearing the defendant's arguments, the trial court denied the motion to quash but granted defendant's motion to set aside the default judgment which had been entered against it.

The majority opinion agrees with the general principle that a plaintiff should not be required to prove all the merits of his case in a hearing designed for the purpose of determining jurisdiction, but indicates that the trial court may consider all the pleadings, including the parties' affidavits, answers to interrogatories, requests for admissions, and depositions. Although the majority does not specifically address the question of whether a court could determine jurisdiction on the basis of the allega-

tions contained in the complaint in the absence of affidavits, answers to interrogatories, and so forth, it is generally held that a *prima facie* showing of threshold jurisdiction is sufficient, and this may be determined from the allegations of the complaint. 4 Wright & Miller, *Federal Practice and Procedure: Civil* § 1068 at 250 (1969). See also *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661 (1st Cir. 1972). Once a plaintiff has alleged sufficient facts to establish jurisdiction under Utah's long-arm statute, the defendant must come forward with evidence to rebut those allegations.[2] Defendant has failed to do that in this case.

The pleadings which are relevant to the resolution of this jurisdictional issue consist of the complaint; the defendant's motion to quash service, set aside the default judgment and dismiss; and the defendant's affidavit in support of those motions. The complaint alleges, *inter alia*, that on or about June 9, 1975, the plaintiff and defendant "entered into an oral contract, under the terms of which defendant agreed to pay to plaintiff a five percent (5%) commission as compensation for its sale to Utah American Steel of a certain drill machine manufactured by defendant." Significantly, the affidavit in response did not specifically deny the existence of an oral contract with the plaintiff.[3] The averment which

1. Plaintiff's complaint and Jensen's affidavit conflict as to whether the plaintiff bought or leased the machinery and as to the exact nature of the relationships among the plaintiff, the defendant, Utah American Steel, and U. S. Steel Credit Corporation, but in any event even the defendant's affidavit indicates that Utah American Steel and the plaintiff negotiated directly with the defendant for the sale of the machinery.

2. In *Texair Flyers, Inc. v. District Court, First Judicial District*, 180 Colo. 432, 506 P.2d 367 (1973), the court took one further step in lessening the burden on the plaintiff to establish jurisdiction over the defendant. The court stated at 369:

. . . as we view the burden imposed upon one who seeks his remedy under the long-arm statute, he must allege in the complaint sufficient facts to engaged in conduct described in the statute which subjects them to *in personam* jurisdiction. This burden having been met, the process is not vulnera-

ble to a motion to quash based upon lack of jurisdiction.

3. The averments contained in the affidavit are set out in full as follows:

1) That several months prior to July, 1975, the affiant received a telephone call from Mr. M. L. Roskelley inquiring as to whether or not Lerco, Inc., would be desirous of retaining his services as a broker, in which conversation he was advised of the commission arrangements under which Lerco, Inc. did business and Mr. Roskelley stated he was not interested in working on that basis.

2) Several months later in early 1975, Lerco, Inc. was contacted by telephone by Utah American Steel concerning certain equipment which they were going to lease from US Steel Credit Corporation and indicating that since they were to be the ultimate user although not the purchaser that they desired to negotiate the terms and specifications of the equipment.

comes closest to denying an agreement with the plaintiff states only that no commitment was ever made to Roskelley & Co. or its representatives regarding any commission. This statement, however, is not sufficient to effectively rebut the plaintiff's allegations regarding the existence of a contract in light of the fact that Utah American Steel obtained the installation of the machinery which was the subject of the negotiations, even though the machinery was leased from U. S. Steel Credit Corporation, a third-party intermediary, instead of purchased directly from defendant.

The only other averment which could be construed as a specific denial of the plaintiff's allegation that an agreement existed was the statement that the plaintiff did not "perform any services regarding the sale to US Steel Credit Corporation, the handling of the money or the installation of the equipment or in any way the servicing of the aforementioned account." However, this statement, too, falls short of adequately denying an agreement, as it focuses on the relationship between the plaintiff and U. S. Steel Credit Corporation and says nothing about the plaintiff's securing a sale for the benefit of Lerco, Inc., and Utah American Steel. This, in fact, is fundamental to plaintiff's claim.

Even more trenchant is the fact that on its face defendant's affidavits affirmatively state facts sufficient to establish jurisdiction. See Footnote 3. The affidavit clearly demonstrates that defendant had estab-lished minimum contacts with the State in connection with the furnishing of the machinery to Utah American Steel. On the undisputed facts, established indeed by the defendant, and the law set out below, the jurisdictional requirements have been met, quite apart from whether the affidavit was in law and fact sufficient to disprove the existence of the contract.

The Utah Long-Arm Statute, § 78–27–24 U.C.A. (1953), as amended,[4] provides two bases for the exercise of jurisdiction in this case. In pertinent part it provides:

> Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:
>
> (1) *The transaction of any business within this state.* . . . [Emphasis added.]

On the basis of defendant's own affidavit, it is clear that the defendant's activities fall within the definition of "transaction of any business" in the state.

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), held that a state could exercise jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional no-

3) That on June 11, 1975, Mr. R. Gary Ellis, President of Utah American Steel, Mr. Din Whitney, his attorney, Mr. Roy Sadler, shop superintendent, Mr. Frank Blain, representative of Roskelley & Co., arrived in Louisville, Kentucky, to negotiate the purchase of certain equipment. Roskelley & Co., had apparently learned of the proposed purchase and had contacted Utah American Steel to see if they could be of any assistance.

4) Neither at the meeting on June 11, 1975, or at any time thereafter nor at any time previous to that date was any commitment ever made to Roskelley & Co., or its representatives regarding any commission.

5) The equipment in question was purchased and a contract was signed with US Steel Credit Corporation about July 16, 1975.

6) The affiant made one trip to the State of Utah to the plant of Utah American Steel, during or after this process, and Lerco, Inc., had occasion following July 16, 1975, to send employees into the State of Utah on one or more occasions to supervise installation and adjustment of the equipment but for no other purposes.

7) Lerco, Inc., was paid directly by the US Steel Credit Corporation, and at no time did Roskelley & Co., perform any services regarding the sale to US Steel Credit Corporation, the handling of the money or the installation of the equipment or in any way the servicing of the aforementioned account.

4. All statutory references are to Utah Code Ann. (1953), as amended, unless otherwise stated.

tions of fair play and substantial justice,' " 326 U.S. at 316, 66 S.Ct. at 158. Specifically, a nonresident defendant was held subject to jurisdiction in the forum state because the claim being sued on arose out of activities related to the defendant's minimum contacts. See also *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which upheld California's assertion of *in personam* jurisdiction over a nonresident defendant whose only contact with the state was the mailing of one insurance agreement and several premium notices to the California plaintiff. Nevertheless, the existence of state boundaries is not altogether irrelevant to jurisdictional issues. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), required that a defendant purposely avail himself of the privilege of conducting activities in the forum state in order to be subject to the jurisdiction of that state.

*Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), stressed the relationships of the defendant, the forum, and the litigation in holding that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," 433 U.S. at 212, 97 S.Ct. at 2584. The Court struck down the finding of jurisdiction based solely on the existence of property which was in the jurisdiction and which was unrelated to the underlying cause of action. Compare *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

In the instant case the defendant's contract for the sale of machinery to U. S. Steel Credit Corporation for lease to Utah American Steel and its installation and adjustment of the machinery in Utah provided a sufficient basis, under the United States Supreme Court cases cited above, for the exercise of jurisdiction even though plaintiff's claim is for a commission arising from a contract between the plaintiff and defendant for the sale of machinery to Utah American Steel.

Other courts have sustained jurisdiction when the claim sued on has a nexus with, but does not arise out of, the facts establishing the transaction of the necessary business. It has been held that a plaintiff's claim "arises from" the defendant's activities if the plaintiff's claim "lies in the wake" of the defendant's commercial activities, *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646, 651 (1966), or if there is a "close relationship" between the cause of action and the nonresident defendant's jurisdictional activities, *Volkswagen Insurance Co. v. Whittington*, 58 Ill. App.3d 621, 16 Ill.Dec. 179, 374 N.E.2d 954, 957 (1978). It is not necessary that jurisdiction, based on minimum contacts, can only support a claim that directly arises out of the particular contacts involved. The fundamental test is, after all, one of fairness. Accordingly, even if a claim arises out of facts somewhat collateral to the established minimal contacts, fundamental fairness is not offended if there is a nexus between those facts and the claim sued on.

The California Supreme Court, in *Cornelison v. Chaney*, 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976), squarely addressed the issue of whether, for the purpose of establishing long-arm jurisdiction, the cause of action alleged by the plaintiff must arise from the defendant's activities within California, or whether it was sufficient that there was a close relationship between the cause of action and the defendant's in-state activities. The defendant in *Cornelison*, a trucker, had come into California twice a month for almost seven years to deliver goods and pick them up to deliver elsewhere. The lawsuit was initiated by a California resident who alleged that the defendant had tortiously caused a motor vehicle accident in Nevada not far from the California border. At the time of the accident the defendant was bringing goods into California. After first concluding that the defendant's activities were not sufficient for California to have general jurisdiction over him, the court nevertheless held that a substantial nexus existed between the plaintiff's cause of action and the defendant's activities in California so as to warrant the exercise of limited jurisdiction over him.

The California position adopted in *Cornelison* derives support from the seminal case of *International Shoe v. Washington, supra.* In *International Shoe* the State of Washington initiated an action to collect payments due the state unemployment compensation fund. Significantly, the claim did not arise out of a particular sale of shoes by defendant within the state, but the nexus between plaintiff's claim and the defendant's activities was held sufficient to sustain jurisdiction over *International Shoe* for the purpose of collecting unemployment compensation payments.

Moreover, the alleged contract between plaintiff and defendant was itself sufficient to establish jurisdiction. In *Cohan v. Municipal Leasing Systems, Inc.,* 379 F.Supp. 1022 (D.C.Ill.1974), the plaintiff, Cohan, a resident of Illinois, sued the defendant, a corporation organized in Pennsylvania with its principal place of business in Pennsylvania, for breach of an oral contract. The suit was brought in Illinois. The plaintiff alleged that the defendant retained him for the purpose of obtaining financing for the development of properties belonging to the defendant. The plaintiff traveled to Pennsylvania twice to examine the properties and to conduct negotiations with respect to the properties. The corporation's president and at least one of the corporation's employees traveled to Illinois once in connection with this transaction, although the corporation denied that they were acting within the scope of their employment in doing so. The defendant moved to quash service of process on the ground that Illinois did not have *in personam* jurisdiction over him. The court denied the motion on the grounds that the plaintiff had made a *prima facie* showing that defendant's activities rendered it subject to jurisdiction under Illinois' long-arm statute, the claim against the defendant arose out of those activities, and plaintiff's allegations had not been effectively controverted by the defendant.

Other courts have reached similar results. In *Waukesha Bldg. Corp. v. Jameson,* 246 F.Supp. 183 (D.C.Ark.1965), due process was held not violated by sustaining jurisdiction over a nonresident for a cause of action against a general contractor. The complaint alleged defective construction of a motor inn. The defendant filed a third-party complaint against a nonresident manufacturer of air conditioning and heating systems valves. The court held that the Wisconsin manufacturer had subjected itself to jurisdiction by contracting to supply services and goods in Arkansas through its Tennessee manufacturer's representative, by supplying goods within the state and by the transactions of its agents and officers in negotiating and supervising the installation of a set of replacement valves. The court pointed out that the manufacturer could have been subjected to jurisdiction in Arkansas solely by virtue of its contracting to supply the first set of valves and its shipment directly to the job site.

The Illinois Supreme Court in *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), held that the necessary minimum contacts existed to establish jurisdiction over a nonresident defendant corporation where the defendant telephoned the plaintiff's employment agency in Illinois in response to the plaintiff's flyer containing resume information about a particular individual and agreed to pay the plaintiff's referral fee if that individual became defendant's employee. The defendant subsequently hired the man referred by the plaintiff, and the plaintiff sued to collect its fee. See also cases collected at 20 A.L.R.3d 1201 §§ 8, 9 (1968).

The following cases also exemplify factual settings in which *in personam* jurisdiction was asserted over nonresident defendants on claims arising out of a contract or transaction where the defendant had only minimal contact with the forum state. *Columbia Metal Culvert Co., Inc. v. Kaiser Industries Corp.,* 526 F.2d 724 (3rd Cir. 1975), sustained the assertion of jurisdiction over a nonresident distributor who had solicited a sale in the forum state and had arranged for shipment to the forum state pursuant to the distributorship agreement. In *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972), a nonresident

defendant and the forum state plaintiff negotiated a sales contract for airplane parts and these parts were to be produced in the forum state. The court of appeals held that the state long-arm statute which authorized jurisdiction over defendants "transacting any business" within the state justified the exercise of jurisdiction over the defendant.

In this case, it is clear that defendant's connection to Utah involved more than contracting to provide goods in Utah. As stated above, the defendant's own affidavit states sufficient jurisdictional facts to subject defendant to the jurisdiction of this state. The defendant not only sold machinery either to U. S. Steel Credit Corporation or to Utah American Steel for delivery and installation in Utah, but also it allegedly negotiated directly with the plaintiff and Utah American Steel for this sale. In addition, its president and other employees came to Utah to supervise the installation and adjustment of the machine operation. Plaintiff's allegation that defendant owes him a commission for his services to the defendant is supported by the telephone call defendant received in which a fee arrangement was discussed and by the fact the plaintiff traveled to Kentucky with Utah American Steel representatives to negotiate the terms of the sale. Under these facts, Utah may assert jurisdiction under subparagraph 1 of § 78–27–23 because it has been properly alleged that the claimed contract constituted the transaction of business in this state and because the claims had a close nexus to admitted acts of defendant in the state sufficient to satisfy due process.

The assertion of jurisdiction over this nonresident defendant is not unreasonable. *Kulko v. Superior Court of California, supra.* The defendant purposefully availed itself of this forum by realizing a commercial benefit through its negotiations with Utah American Steel, by sending its president to Utah for some of these negotiations, by sending its employees here to install and adjust the machinery, and, assuming plaintiff's allegations are true, by orally contracting to pay a commission from the sale of the machinery to the plaintiff. Moreover, there is no evidence to suggest that this particular defendant will be unfairly inconvenienced or prejudiced by defending itself in the courts of this state. Indeed, the witnesses to this alleged contract for a commission are for the most part to be found within the state.

Utah has a serious interest in providing an available, effective, and efficient means of resolving disputes arising within its borders. The Legislature has spoken clearly; its stated policy is to open Utah courts "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution," § 78–27–22, for the protection of Utah residents. The failure to sustain jurisdiction over the defendant in this case falls short of that purpose.