Ted R. BROWN and Associates, Inc., a corporation, Plaintiff and Appellant,

v.

CARNES CORPORATION, a corporation, and Long Deming Utah, Inc., a corporation, Defendants and Respondents.

No. 15928.

Supreme Court of Utah.

April 24, 1980.

**379**

Allen H. Tibbals and Craig G. Adamson of Tibbals & Staten, Salt Lake City, for plaintiff and appellant.

O. Wood Moyle, III and Reid E. Lewis of Moyle & Draper, Salt Lake City, for Carnes.

Robert D. Merrill of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for Long Deming.

MAUGHAN, Justice:

Before us is a judgment of the District Court granting a motion to quash service of summons, and thereby refusing to take jurisdiction, under Utah's Long Arm Statute. Ted R. Brown and Associates, Inc. appeal. We reverse and remand for trial. Costs to appellant. All statutory references are to Utah Code Annotated, 1953.

The defendants' acts have rendered them amenable to the jurisdiction of our courts for resolution of the plaintiff's claim.

1. The architectural firm's need for a unique air conditioning system necessitated the adaptation of Carnes' general apparatus to fulfill certain specific requirements.

Excluding the procedural complexities, the factual setting of the present controversy is relatively simple. The defendant, Carnes Corporation, (hereinafter Carnes) is an incorporated subdivision of a Wisconsin Corporation involved in the manufacture and sale of heating and air conditioning equipment. Carnes maintains no permanent personnel or physical facilities in the State of Utah, but markets its products here through contractual agreements with certain sales representatives.

Acting pursuant to such a sales agreement Ted R. Brown, (hereinafter Brown) initiated negotiations with the architectural firm responsible for the design and construction of an office building for the Church of Jesus Christ of Latter-Day Saints (hereinafter Church). Subsequently, Carnes sent representatives to Utah to illustrate the applicability of their product to the requirements of the office building construction.[1] The combined efforts to sell the products in Utah were successful and resulted in the installation of the Carnes system in the recently constructed building.

However, prior to the completion of the project, Carnes cancelled its contract with Brown and entered into a similar contractual relationship with Long Deming Utah, Inc. Brown initiated the present suit to recover monies paid to Long Deming Utah, Inc., by Carnes which Brown alleges were due him as a commission from the sale of the air conditioning equipment to the church.

The only issue presented on appeal is the amenability of Carnes to the jurisdiction of Utah courts for the resolution of this matter. Carnes has established sufficient "minimal contacts" with this State to justify application of our Long Arm Statute.

Jurisdiction over non-resident defendants is controlled by the Utah Long Arm Statute, 78–27–24, which provides:

"Any person[2] . . . whether or not a citizen or resident of this State, who

2. Under 78–27–23, the term any "person" is defined as any "individual, firm, company, association, or corporation."

in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business within the state;

(2) Contracting to supply services or goods in this state; . . ."

Carnes was transacting business within the State in relation to the sale and subsequent installation of air conditioning units in the church office building. Its various business activities included contracting to supply goods and providing services incident to the installation of its product in the State of Utah. The defendant's activities fall squarely within the parameters of 78–27–24 and render Carnes amenable for any actions arising from these activities.

In determining whether the claims of the plaintiff arise from the activities of the defendant and thus become cognizable in accordance with 78–27–24, reference to the Legislature's intent in enacting the Utah Long Arm Statute is illuminating. In declaring the purpose of the act the Legislature explained in 78–27–22:

"It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection . . .

\* \* \* \* \* \*

"The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over non resident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."

The legislative mandate is clear. The protection afforded by the courts of this State must be applied to the fullest extent allowed by due process of law.[3]

Due process considerations require delineation of the relationship between the parties, the litigation and the State to determine if recognizing jurisdiction in the matter would affront traditional notions of fair play and substantial justice.[4] As pointed out in *Mallory Engineering, Inc. v. Valad Electric*,[5] this mandates consideration of: (1) whether the cause of action arises out of or has a substantial connection with the activity; (2) the balancing of the convenience of the parties and the interest of the State in assuming jurisdiction; and (3) the character of the defendant's activity within the State.

In the present situation the defendant's activities, i. e., transacting business and contracting to supply goods within the State, represent a purposeful intrusion into the State which is sufficient to supply the requisite factual nexus between the defendant and the State.[6]

Secondly, the State's interest in protecting the rights of its residents who are adversely affected by the interstate activities of non-resident manufacturers outweighs any inconvenience the defendant may experience in defending his activities in the State.[7]

Thus, in this case, the amenability of the defendant depends on a determination of the relationship between the actions tak-

**3.** See *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp.*, Utah, 578 P.2d 850, 853 (1978).

**4.** *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**5.** *Mallory Engineering, Inc. v. Valad Electric Heating Corp.*, Utah, No. 15530.

**6.** As we explained in *Mallory*, id., this requirement is fulfilled whenever the activities of the defendant fall within the purview of Section 78–27–24; See also *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1957). Carnes' purposeful activities provide implied notice that the laws of Utah will be applied in relation to those activities.

**7.** An entity which undertakes to manufacture and supply merchandise throughout the several states has an opportunity to incorporate the economic disadvantage of defending against suits in several jurisdictions into its operating expenses and cannot, therefore, complain about the economic hardship incident to their amenability in a specific state.

en in Utah and the particular cause of action presented by Brown. Carnes manufactures heating and air conditioning equipment. This equipment is made available to interested parties through the efforts of local sales representatives. Although Carnes directly employs no personnel in the State of Utah it does effectuate the sale of its equipment through the efforts of local representatives bound to Carnes by a contractual commitment. This association enables Carnes to receive orders for the sale of its goods and enter into contracts for the eventual supply of those goods into this State.

The efforts of the various sales representatives, such as Brown, are so intricately related to the actual contracting that any claim concerning such efforts must be considered as arising out of that activity.

In addition, in this particular case, the activities of Carnes in the creation of the relationship between itself and Brown, represents the transacting of business within the State. By contracting with Brown to market its products within the State, Carnes initiated the supply of its manufactured products within the State. The establishment of the business relationship between Carnes and Brown is as much an element of the business as the production and supply of the goods entering the State.

By seeking the benefits of the Utah market, Carnes rendered itself subject to the protections granted to consumers and businesses under the laws of the State. All parties adversely affected by the defendant's transaction of business in this State are granted, by the language of 78–27–24 a forum in our courts to adjudicate their claims. The right extends not only to the final consumer of the defendant's products but also to persons adversely affected by their connection with the defendant in the particular business transaction.

Therefore, the district court erred in not recognizing its jurisdictional power over Carnes in this particular situation. The case is remanded to the district court for trial on the merits.

STEWART, J., concurs.

CROCKETT, Chief Justice (concurring with reservation and suggestion.)

Judicial duty requires that I accept the views of the majority as set forth in our recent cases of *Burt Drilling, Inc., etc. v. Portadrill, etc.*, 608 P.2d 244 (Utah 1980), and *Mallory Engineering, Inc. v. Ted R. Brown and Assoc., Inc.* (Utah No. 15530, filed March 6, 1980), as the law of this state. Under the principles therein expressed, I have no strong disagreement with the proposition that the activities within the state of Utah for which the defendant engaged the plaintiff (and subsequently Long Deming Utah, Inc.) could well be found to constitute sufficient contacts within this state to justify invoking the jurisdiction of our courts.

This supplemental thought is offered: in regard to the earlier attempts, in 1973 and 1974, to obtain service on the defendant, and the motions to quash thereon, which were granted, the trial court made no findings. As to the later hearings, in 1977, before another district judge, it appears that the court based its ruling refusing to take jurisdiction largely on the ground that he thought there had been shown no substantial change from the circumstances of the court's prior rulings. It is my view that, even though the proceedings in this case have been entirely too protracted already, the proper and orderly procedure, in fairness to both sides, would be to remand this case to give each a full opportunity to present its evidence and contentions and have findings of fact and conclusions made thereon in the light of the recently decided cases above referred to.

I also think it would be appropriate to observe that this Court has given consideration to the defendant's claim of res judicata, based upon the prior rulings, and has resolved that issue against the defendant's contentions.

WILKINS, Justice (concurring):

I concur with the majority opinion that our Courts have personal jurisdiction over

Defendant Carnes in this case. But I wish to make an additional statement of the facts by which that jurisdiction is established.

Carnes entered into a written contract with Brown in 1961 by which Carnes granted to Brown the right to act as Carnes' exclusive sales agent in the State of Utah. The contract was terminated by Carnes in 1968. In the evidentiary hearing in the District Court on the matter of jurisdiction, Mr. Brown testified that during the seven years of the existence of the contract, Carnes' volume of business in this State amounted to many hundreds of thousands of dollars. Brown brought this action to recover commissions it alleges are owed to it under the contract. Carnes does not deny the existence of the contract, nor does it deny that it has done a substantial amount of business here. Carnes contends that Brown's claim does not "arise out of" any transaction of business conducted by Carnes in this State, nor the contracting or supplying by Carnes of any goods or services in this State. In short, Carnes denies jurisdiction under Subsections (1) or (2) of our long arm statute, Section 78–27–24, Utah Code Ann., 1953, as amended.

It is my opinion that this record shows that Carnes has been doing substantial and continuous business in this State, sufficient probably for the assertion of *general* jurisdiction,[1] and the issues of limited or special jurisdiction under Section 78–27–24 would, if this is true, be unnecessary. Nevertheless, the arguments of the parties focused on the bases for limited jurisdiction, as does the majority opinion. Assuming that this is a case under the long arm statute, an analysis of Section 78–27–24 here must involve recognition that there is evidence that the

defendant "purposefully avail[ed] itself of the privilege of conducting activities"[2] within this State, by which it could be said that it had knowingly submitted itself to our jurisdiction for the purpose of litigating this particular claim.

By entering into a contract by which Carnes granted Brown the exclusive right to act as its sales representative and designating Brown's territory as the State of Utah, Carnes purposefully entered this State to transact business here.[3] By doing so, it knowingly submitted itself to the jurisdiction of our Courts for the adjudication of any claim arising out of that contract under Section 78–27–24(1).[4]

ELLETT, Retired J., dissents.

HALL, J., having disqualified himself, does not participate herein.

1. See *Abbott G. M. Diesel, Inc. v. Piper Aircraft Corp.*, Utah, 578 P.2d 850 (1978).

2. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957).

3. It was the intention of the parties to the contract that it be performed in the State of Utah. Compare *Belmont Industries, Inc. v. Superior Court of Stanislaus County*, 31 Cal. App.3d 281, 107 Cal.Rptr. 237 (1973) where one of the basic facts on which the court determined the lack of jurisdiction was that the

contract of parties did not require plaintiff's services to be performed in the State of California.

4. Compare our recent case of *Roskelley & Co. v. Lerco, Inc.*, Utah, 610 P.2d 1307 (1980), wherein we found no such purposeful activities on the part of defendant by which it could be said it had knowingly submitted itself to the jurisdiction of our courts for the purpose of litigating plaintiff's claim.