[Civ. No. 22610. Third Dist. June 13, 1984.]

ROCKLIN DE MEXICO, S. A., Petitioner, v.
THE SUPERIOR COURT OF PLACER COUNTY, Respondent;
ROCKLIN FOREST PRODUCTS, INC., et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

**COUNSEL**

Ash, Hutcherson & Hausauer and Lesley Ann Ash for Petitioner.

No appearance for Respondent.

McDonough, Holland & Allen, Harry E. Hull, Jr., and Janet Neeley Kvarme for Real Parties in Interest.

## Opinion

**BLEASE, J.**—In this appeal we hold that, in the circumstances of this case, substantial purchases of California goods by an out-of-state buyer provide sufficient minimum contacts with the state to sustain its jurisdiction over the buyer in a suit for breach of the contracts of sale.[1]

Rocklin De Mexico (hereafter defendant) is a Mexican corporation which bought raw materials from a California supplier for use in its box manufacturing plant in Mexico. The purchases were effected by orders placed from outside the state. The California seller filed suit alleging defendant failed to pay for $70,000 worth of goods.

This case comes to us on a timely petition for review of the trial court's denial of a motion to quash service of summons.[2] (See Code Civ. Proc., § 418.10, subd. (c).) We will deny the petition.

### Facts

Defendant manufactures wooden crates and boxes at a factory in Mexicali, Mexico. Prior to May 1, 1981, Rocklin Mouldings, Inc., a California corporation, had an ownership interest in defendant. It is related by common ownership to Rocklin Forest Products, Inc., another California corporation, which is in the lumber business. During Rocklin Mouldings' tenure as an owner of defendant, Rocklin Forest Products, Inc. supplied the lumber used by defendant for its fabrication of boxes.

On May 1, 1981, Rocklin Mouldings sold its interest in defendant to Carlos Postlethwaite. Negotiations concerning the sale occurred in Mexico and in California. Prior to the sale, at the invitation of the joint president of Rocklin Mouldings and Rocklin Forest Products, Postlethwaite went to the Rocklin Forest Products plant in Roseville to see its operation and determine the availability of lumber for use in the box making business. Postlethwaite purchased defendant. Thereafter, between May 1, 1981, and November 1981, defendant ordered lumber almost weekly from Rocklin Forest

---

[1]Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions shall publish part 1 of the opinion and not publish part II of the opinion.

[2]This court initially denied the petition without opinion. The California Supreme Court granted a petition for hearing and retransferred the case to this court with directions to issue the alternative writ.

Products. The lumber was ordered by telephone calls from Mexico and shipped from Roseville to Mexicali, Mexico. The underlying action arose when defendant failed to pay for $70,000 worth of lumber delivered to it.

DISCUSSION

I

■ California's "long-arm" statute extends the jurisdiction of California courts to the outermost boundaries of due process. "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; see *Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057], see also *Shaffer v. Heitner* (1977) 433 U.S. 186 [53 L.Ed.2d 683, 97 S.Ct. 2569] [in rem jurisdiction].)

The clarity of the law of jurisdiction has not improved since Judge Learned Hand observed: "It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass." (*Hutchinson v. Chase & Gilbert* (2d Cir. 1930) 45 F.2d 139, 142.) The footing has become less sure because of the shift in constitutional analysis from "presence" to "minimum contacts." (See, e.g., Lilly, *Jurisdiction Over Domestic and Alien Defendants* (1983) 69 Va.L.Rev. 85, 87-98 (hereafter *Jurisdiction*); Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis* (1966) 79 Harv.L.Rev. 1121.) A further complication is the admixture of considerations of forum non conveniens. (See, e.g., *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 150-152 [127 Cal.Rptr. 352, 545 P.2d 264].) Although the cases do not articulate a formula for evaluating contacts relevant to fair play and substantial justice, they do set forth criteria, embedded in paradigmatic conduct, by which to measure their sufficiency. (See Brilmayer, *How Contacts Count: Due Process Limitations On State Court Jurisdiction* 1980 Sup.Ct.Rev. 77.) *Henry R. Jahn & Son v. Superior Court* (1958) 49 Cal.2d 855 [323 P.2d 437] provides the criteria applicable to this case.

In *Jahn*, a corporate New York exporter purchased grain drying equipment over a two-year period from the California plaintiff, pursuant to an exclusive contract, for resale through distributors in South and Central America. The exporter shifted his contractual allegiance to a California

partnership which sought to take over plaintiff's markets. Plaintiff alleged the exporter and his new suppliers induced breaches of its contracts with the South and Central American distributors, using confidential information to compete unfairly. (*Id.,* 49 Cal.2d at pp. 857-858.) At issue was whether the ongoing purchasing conduct constituted "doing business" in California, making the foreign corporation amenable to substituted service of process. (Former Corp. Code, § 6501.) "Doing business" was a term used by the courts to mean contacts sufficient to satisfy due process. (*Jahn, supra,,* at p. 858.)

■ *Jahn* held that regular purchasing activity in the forum state can provide jurisdictional contacts compatible with fair play and substantial justice. "Under the minimum contacts test of the International Shoe case regular sales solicitation *alone* can constitute doing business rendering the foreign corporation amenable to process in actions engendered by such activities. . . . [citations]. Since there is no distinction for jurisdictional purposes between regular selling and regular buying [citations] . . . jurisdiction [may be maintained] on the basis of the defendant's purchasing activities in the state." (*Id.,* at p. 859, italics added.)

*Jahn* emphasized these facts: "Jahn made regular purchases from plaintiff as its exclusive export agent. It took title to the goods in this state. It directed its agent how and where to ship them. Even after it ceased doing business with plaintiff, it entered into a similar course of business dealings with defendant partnership. It reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any rights in regard to these transactions. The alleged cause of action grew directly out of Jahn's relationship with plaintiff and the partnership in this state." (*Id.,* at p. 861.)[3]

*Jahn*'s broad teaching that purchasing activity may suffice for jurisdiction has been obscured in subsequent appellate decisions.[4] *Tiffany Records, Inc.*

---

[3]*Jahn* rejected the holding in *Rosenberg Bros. & Co.* v. *Curtis Brown Co.* (1923) 260 U.S. 516 [67 L.Ed. 372, 43 S.Ct. 170] because the "United States Supreme Court . . . has advanced beyond the presence theory of jurisdiction underlying that case." (*Id.,* at p. 859.) The United States Supreme Court recently relied on *Rosenberg* in holding that purchasing activities are insufficient contacts for the assertion of *general* jurisdiction, i.e. on causes of action *not* arising out of the purchasing activity. (*Helicopteros Nacionales de Colombia, S.A.,* v. *Elizabeth Hall* (1984) — U.S. —, — [80 L.Ed.2d 404, 413, 104 S.Ct. 1868].) But the court expressly disclaimed indorsement of *Rosenberg*'s holding that purchasing activity cannot sustain jurisdiction over a cause of action arising *directly* from the purchasing activity. (*Helicopteros, supra,* — U.S. at p. —, fn. 12 [80 L.Ed.2d at p. 413].)

[4]The exception is the first purchasing case after *Jahn, American Continental Import Agency* v. *Superior Court* (1963) 216 Cal.App.2d 317 [30 Cal.Rptr. 654]. It applied *Jahn* to found jurisdiction upon purchases by a German corporation of aircraft parts secured through contracts effected by international communications. The only additional consideration it noted was that an ostensible agent of the out-of-state corporation had come to California after the formation of the contracts to monitor their expeditious performance by the California seller. (*Id.,* at p. 322.)

v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610 [81 Cal.Rptr. 320], upon which the defendant relies, is the point of departure. It distinguished *Jahn* on the facts; Jahn was the exclusive distributor of plaintiff's products; the contract had been created in California; Jahn had twice sent its auditors to California to monitor compliance with the purchase orders. (See *id.*, at p. 616.) The court emphasized the purchasing activities were wholly out of state and lacked "that quality and nature of activity that would make it 'fair' to require any respondent to defend itself [in California]." (*Id.*, at p. 619.)[5]

*Tiffany Records* served as authority in subsequent decisions for an implicit rejection of *Jahn*'s broad teaching.[6] (See *Belmont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281, 287-288 [107 Cal.Rptr. 237]; *Cornell University Medical College* v. *Superior Court* (1974) 38 Cal.App.3d 311, 316-318 [113 Cal.Rptr. 291]; cf. *Floyd J. Harkness Co., Inc.* v. *Amezcua* (1976) 60 Cal.App.3d 687, 692-694 [131 Cal.Rptr. 667].) These cases advance two claims which run counter to *Jahn*. They say that regular purchases in the forum state carry no jurisdictional weight because they do not constitute conduct *by* the purchaser *in* California. (See *Belmont, supra,* 31 Cal.App.3d at p. 288, *Cornell, supra,* 38 Cal.App.3d at p. 316; *Harkness, supra,* 60 Cal.App.3d at p. 691.) They also say it is advantageous to California's merchants to decline jurisdiction because it would encourage out-of-state purchasers to do business here. (See, e.g., *Belmont, supra,* at p. 289.) Neither of these propositions has merit.

The latter point is irrelevant. It was squarely posed by the dissent in *Jahn* and was impliedly rejected. (See *id.*, 49 Cal.2d at p. 863 (dis. opn. of

---

[5]We do not imply the result in *Tiffany Records* is incorrect. The case involved complex contracts entailing tedious and factually burdensome defenses. (*Id.*, 276 Cal.App.2d at p. 619.) The plaintiff solicited the out-of-state purchases in the home states of the buyers and claimed it was injured by the overly generous conduct of its own California employee in the transactions. (*Id.*, at pp. 612-613.) This presented a sympathetic case for application of considerations of forum non conveniens in evaluating "fairness." (See generally Annot. (1963) 90 A.L.R.2d 1109; cf. e.g., *Cornelison* v. *Chaney, supra,* 16 Cal.3d at pp. 150-152; but see *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 477 [108 Cal.Rptr. 23].) Moreover, at that time a motion to dismiss on grounds of forum non conveniens was not permitted by special appearance. (Cf. former Code Civ. Proc., § 416.1, Stats. 1963, ch. 878, § 1, with current § 418.10 and see Cal. Const., art. VI, § 13.) *Tiffany Records* also can be distinguished because the out-of-state defendants, engaged in interstate commerce, had ceased doing such business before served with process. Former Corporations Code section 6501, as applicable, permitted service only if the defendant was *currently* "doing business" in California. (See Stats. 1957, ch. 2261, § 37; cf. *Detsch & Co.* v. *Calbar, Inc.* (1964) 228 Cal.App.2d 556 [39 Cal.Rptr. 626] with *Sanders* v. *CEG Corp.* (1979) 95 Cal.App.3d 779 [157 Cal.Rptr. 252]; see also 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 109 et seq.) This statutory limitation on jurisdiction no longer obtains. (see *Sanders, supra.*)

[6]As with *Tiffany Records,* we imply no criticism of their results. Our criticism is addressed to their reasons which contradict *Jahn.*

Schauer, J.).) It does not address the "fairness" of holding a defendant to answer in the forum state, which is the bedrock of due process. Rather it makes a policy choice between competing interests of California's merchants, a consideration outside the constitutional concerns of the "long-arm" statute.

The mainstay of *Belmont's* contradiction of *Jahn* is the claim that "[plaintiff's] performance in California cannot give jurisdiction over [defendant]; it is [defendant's] activity that must provide the basis for jurisdiction." (*Id.,* 31 Cal.App.3d at p. 288; see also *Cornell, supra,* 38 Cal.App.3d at p. 316; *Harkness, supra,* 60 Cal.App.3d at p. 691.) This claim is rebuffed by *Jahn* and other authorities.[7] It disinters the moribund doctrine that "presence" in the forum state is indispensable to the exercise of jurisdiction. It misunderstands the constitutional requirement that "it is essential in each case that there be some act by which the defendant *purposefully* avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (See *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228], italics added.) The point *Belmont* misses is that this requirement can be satisfied without the *presence,* by agents or employees of the defendant in the jurisdiction.[8] "[T]he constitutional right to exercise jurisdiction over the person . . . hinges upon a sufficient contact *initiated by the defendant.* Affiliations with the forum that involve the defendant but are instituted by another person do not meet the constitutional minimum." (See Lilly, *Jurisdiction, supra,* 69 Va.L.Rev. at p. 99, italics in original.) The reason for this distinction is that "[t]he *unilateral* activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." (*Hanson, supra,* 357 U.S. at p. 253 [2 L.Ed.2d at p. 1298],

---

[7]In contract cases two kinds of contacts, frequently held sufficient for due process, involve no acts of the out-of-state defendant inside the forum. These contacts are: performance by either party in the forum and; formation of the contract in the forum, i.e., that the last act necessary occurred there. (See Annot. (1969) 23 A.L.R.3d 551; cf. Annot. (1950) 12 A.L.R.2d 1439; see generally Rest.2d Conflict of Laws, § 35 et seq.; Uniform Interstate and International Procedure Act § 1.03, 13 U. Laws Ann. p. 466 et seq. (1980).) "A somewhat more attenuated contact between the defendant and the forum, but one still attributable to the defendant, arises when he requires or specifies that someone else should perform an act within the forum. . . . For example, the defendant might enter into a contract with the plaintiff requiring the plaintiff to undertake activities in the forum." (See Brilmayer, *How Contracts Count, supra,* 1980 Sup.Ct.Rev. at p. 91; cf. *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 671, fn. 2 [190 Cal.Rptr. 175, 660 P.2d 399].)

[8]Of course, such purposeful activity can be shown where an employee of the purchaser is sent to the forum state to conduct the purchases. The same ·is true where the defendant retains a California agent to effect its purchases. (See, e.g., *Boote's Hatcheries etc. Co. Inc.* v. *Superior Ct.* (1949) 91 Cal.App.2d 526 [205 P.2d 31].) But there is no distinction of constitutional significance between activity performed by the plaintiff, acting at the defendant's behest, and activity performed by an employee or agent intermediary of the defendant.

italics added.) It follows that "[o]ur inquiry [must be] directed to whether plaintiff's cause of action . . . arises out of or has a substantial connection with a business relationship defendant has *purposefully* established with California." (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 149, italics added.) That is also the principle ingredient in *Jahn's* reasoning.

■ Here, defendant initiated the purchases of lumber; in fact the purchases grew out of Postlethwaite's purchase of Rocklin Mouldings' interest in defendant and his concern to have a reliable source of wood for box making. When the defendant acted in Mexico, by offering to purchase raw lumber from Rocklin Forest Products in California, it intended to cause effects in California and to derive an economic benefit as a result. The acts were calculated to induce the California plaintiff to assume obligations enforcable in California. Because of the nature of the transaction, we infer, in support of the trial court's ruling, that delivery of the lumber and passage of title to it occurred in California. (See Cal. U. Com. Code, §§ 2308, 2401.) By these means defendant "reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any rights in regard to these transactions." (See *Jahn, supra,* 49 Cal.2d at p. 861.)

The lumber sales were an activity *in* California *initiated by* the defendant and conducted recurrently. Title to the goods was taken in California. The goods sent from California were raw materials essential to the core economic activity of the out-of-state purchaser. (See Annot. (1950) 12 A.L.R.2d 1457 et seq., § 6.) The purchaser was engaged in an economic enterprise and not personal consumption. The value of the purchases was substantial. (Cf. *McCoy Lumber Industries, Inc.* v. *Niedermeyer-Martin Co.* (M.D.N.C. 1973) 356 F.Supp. 1221.) These purchasing contacts are "of the sort that would induce a reasonable defendant to foresee the possibility of defending a suit in the forum state . . . ." (See Lilly, *Jurisdiction, supra,* 69 Va.L.Rev. at p. 99 [fn. omitted]; cf. *Secrest, supra,* 33 Cal.3d at p. 671 ["the sale . . . should have caused Secrest to anticipate being haled into a California court . . . ."].)

The defendant's purposeful activity satisfies the criteria in *Jahn.* It also satisfies the due process requirement that the defendant initiate purposeful activity in the forum state. (See generally, *Sibley, supra,* 16 Cal.3d at pp. 446-448[9]; *Neadeau* v. *Foster* (1982) 129 Cal.App.3d 234, 240 [180 Cal.Rptr. 806]; Rest.2d Conflict of Laws, § 37; Annot. (1969) 23 A.L.R.3d 551; cf. *Abbott Power Corp.* v. *Overhead Electric Co.* (1976) 60 Cal.App.3d 272 [131 Cal.Rptr. 508].)

---

[9]In the course of this discussion *Sibley* did cite *Belmont* without disfavor.

On the facts in this case, we hold the defendant's purchasing activity in California is sufficient for in personam jurisdiction.[10]

## II*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The alternative writ, having served its purpose, is discharged. The petition is denied.

Evans, Acting P. J., and Carr, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 13, 1984.

---

[10]We emphasize that not every such purchase of goods compels the exercise of jurisdiction. We have no occasion to consider whether an isolated transaction would have that result. (See *Jahn, supra,* 49 Cal.2d at p. 861.) Delivery of the goods to a buyer outside California may alter the foreseeability of litigation in this forum. Fairness to the defendant may require denial of jurisdiction even where regular purchases are made. (See, e.g., *McCoy Lumber, supra,* 356 F.Supp. 1221; *Microelectronic Systems Corp.* v. *Bamberger's* (E.D.Mich. 1977) 434 F.Supp. 168.) However, as we explain in the unpublished portion of this opinion, defendant's fairness arguments are unpersuasive.

*See footnote 1, *ante,* page 93.