[No. H008805. Sixth Dist. Jan. 30, 1992.]

FUTURESAT INDUSTRIES, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BAY AREA INTERCONNECT, Real Party in Interest.

156

**COUNSEL**

William Thomas Lewis for Petitioners.

No appearance for Respondent.

Siner, Steinbock, Hofmann & Pennypacker, Steven D. Siner and Bernard B. Siner for Real Party in Interest.

OPINION

**AGLIANO P. J.**—This is a timely petition for statutory mandate (Code Civ. Proc., § 418.10, subd. (c)) after the trial court denied petitioners' motion to quash service for lack of jurisdiction. We hold, for reasons we will state, that there is no California jurisdiction over nonresident buyers of motion picture videotapes in this action by the sellers, a California partnership.

RECORD

Petitioners are Futuresat Industries, Inc. (Futuresat) and Hollywood Broadcasting Network, Inc. (Hollywood), corporate entities whose principal place of business is in the state of Texas. Real party in interest is Bay Area Interconnect, a California partnership (Bay) whose office is in San Jose. Bay filed this lawsuit for breach of contract and common counts against Futuresat and Hollywood for payment pursuant to oral contract for some 800 motion picture videotapes sold and delivered to defendants. Bay seeks some $28,649.33 plus attorney's fees and costs.

Futuresat and Hollywood moved to quash service of summons or alternatively for a stay or dismissal on the ground of forum non conveniens. They presented evidence that neither defendant is incorporated in California, has appointed an agent for service of process here, has done business here, maintained bank accounts, owned assets, had telephone listings or offices, or otherwise transacted business within California, except the business to be described with Bay.

All communications between Bay and petitioners were by written correspondence or telephone. Petitioners have not come into California in connection with their business with Bay. Futuresat is incorporated under New Jersey law and Hollywood is incorporated under Texas law. Futuresat is a publicly traded company in the over-the-counter market.

According to the papers filed by Bay below, Bay had a library of classic movie videotapes to sell after it terminated its operation of the Classic

Movie Channel on cable television. It advised several companies in the business that its library would be sold. Futuresat contacted Bay by telephone and expressed interest in buying the library. Bay never solicited Futuresat's business directly; rather Futuresat learned of the tapes through another company based in Chicago.

The parties had letter and telephone negotiations regarding the purchase. Futuresat sent Bay an audited financial statement in order to obtain credit in connection with the purchase. Futuresat said it wished to complete the purchase by February 28, 1989, and Bay accepted an offer of a price of $75 per movie. The number of available movies was between 700 and 800. Futuresat stated that the purchase would be made by its subsidiary, Hollywood, doing business as Telemedia, and Futuresat would guarantee payment.

On February 28, 1989, Bay confirmed the agreement in writing, specified the exact number of movies, and set out a payment schedule it would require from Futuresat. Bay's letter was written by Ben Pellegrino and said Bay would sell Futuresat 740 motion pictures at $75 per title for a total of $55,500; Bay would require a down payment of 50 percent of the above amount ($27,750) before delivery and then 6 monthly payments of $4,625 beginning 30 days after delivery.

On May 18, 1989, Telemedia's national sales manager, Harry C. Nyce, wrote to Mr. Pellegrino saying Telemedia's closing was delayed; Telemedia agreed to a May 31, 1989, closing; and in order not to further delay the transaction between the parties, Nyce attached a check dated May 31, 1989, for $27,750, and asked Pellegrino to deposit the check on that date and complete the transaction.

On August 1, 1989, Nyce wrote another letter to Pellegrino attaching a first payment for the films and requesting return of the check sent earlier on May 18. He asked that the films be shipped as soon as possible. He concluded by saying "We are looking forward to doing more business with you."

On August 22, 1989, Pellegrino wrote to Nyce saying that the shipment of films went out and should have been received by Telemedia by August 22, 1989. The letter enclosed six promissory notes made out to Bay Area Interconnect for $4,774.89 each to be signed and returned to Pellegrino's attention. These, the letter said, should be liquidated monthly starting September 22, 1989, through February 22, 1990. Also Pellegrino returned the May 18 check, as requested. The shipment to Telemedia in Texas contained 740 classic movies. The executed notes were returned to Bay on November 28, 1989.

The complaint alleged that none of these notes was ever paid and that defendants have refused numerous demands for payment.

## DISCUSSION

■ The burden of proof was upon Bay in the trial court to establish the fact of jurisdiction by a preponderance of the evidence. (*Kaiser Aetna* v. *Deal* (1978) 86 Cal.App.3d 896, 904 [150 Cal.Rptr. 615]; *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995 [107 Cal.Rptr. 744].) The presumption shifts upon appeal, however, and if the trial court judgment is supported by substantial evidence it will not be disturbed on appeal. (*Kaiser Aetna*; *Arnesen*, both *supra*.)

■ Bay in its papers below correctly stated the applicable test of jurisdiction over an out-of-state buyer, which is whether plaintiff's cause of action " 'arises out of or has a substantial connection with a business relationship defendant has purposefully established with California.' " (*Rocklin De Mexico, S.A.* v. *Superior Court* (1984) 157 Cal.App.3d 91, 98 [203 Cal.Rptr. 547], italics omitted.) Regular purchasing activities in this state may be a basis for jurisdiction over an out-of-state buyer. (See *Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855 [323 P.2d 437].) On the other hand, no case premises jurisdiction over such a buyer on a single-sale transaction. (See generally, Annot., 23 A.L.R.3d 551; e.g. *Rath Packing Co.* v. *Intercontinental Meat Trad., Inc.* (Iowa 1970) 181 N.W.2d 184, 188-189.) The predominant rule in the federal courts is that a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state. (*Borg-Warner Acceptance Corp.* v. *Lovett & Tharpe, Inc.* (11th Cir. 1986) 786 F.2d 1055, citing extensive authority.)

California decisions similarly have declined to find jurisdiction against out-of-state buyers except in rare instances where extensive business was done here. (See, e.g., *Cornell University Medical College* v. *Superior Court* (1974) 38 Cal.App.3d 311, 316 [113 Cal.Rptr. 291]; *Interdyne Co.* v. *SYS Computer Corp.* (1973) 31 Cal.App.3d 508 [107 Cal.Rptr. 499]; *Belmont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237]; *Tiffany Records Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320].) Jurisdiction over an out-of-state buyer must be premised on a substantial basis such as an ongoing relationship or course of dealings with the plaintiff. The test is not physical presence, which is not essential, but rather the totality of the jurisdictional contacts as relevant to whether the assumption of jurisdiction is fair. Continuous and substantial buying activity within the state can constitute sufficient contacts to warrant the exercise of jurisdiction. (*Henry R. Jahn & Son*

v. *Superior Court, supra,* 49 Cal.2d 855; *American Continental Import Agency* v. *Superior Court* (1963) 216 Cal.App.2d 317, 322 [30 Cal.Rptr. 654].)

Bay presented these factors to justify jurisdiction over petitioners: the buyer is a publicly owned corporation; it initiated the transaction and obtained credit from plaintiff; the transaction involved ongoing negotiations spanning a six-month period; and some five months after initiating the transaction, the purchaser showed interest in another purchase, as evidenced by the above quotation from Mr. Nyce's letter saying he looked forward to doing more business with Bay. Bay particularly emphasized the fact that petitioners initiated a "substantial" sales purchase for a total price of $55,000, secured by promissory notes payable in California.

In its order denying the motion to quash, the trial court, although noting that the issue was close, found jurisdiction based on general language in California Supreme Court decisions that California's long-arm statute (Code Civ. Proc., § 410.10) provides for the exercise of jurisdiction "on any basis not inconsistent with the United States or California Constitutions." (Citing *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 668 [190 Cal.Rptr. 175, 660 P.2d 399].)

However, neither of those decisions involved an out-of-state buyer. Neither purported to base jurisdiction on a single sales transaction. For instance, the *Secrest* decision involved a resident buyer's product liability action against an out-of-state seller, an altogether different situation where jurisdiction has traditionally been frequently found, based upon the facts that the seller profits from sales in this state, causes effects here, knows the product will be used here, and can reasonably foresee possible subjection to suit here should the product prove defective. (*Secrest, supra,* 33 Cal.3d at pp. 670-671.) *Secrest* pointed out that California courts have long held that corporate manufacturers of allegedly defective products sold within this state have satisfied jurisdictional requirements of purposeful activity here and may fairly be subject to suit here. (*Secrest, supra,* at p. 669, citing, e.g., *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 901 [80 Cal.Rptr. 113, 458 P.2d 57].)

The case is altogether different as regards an out-of-state buyer. It has been observed that when an action is against a nonresident buyer, the same strong interest of the forum state which protects resident buyers who receive defective products by assuring them a local forum also requires protecting those buyers against being forced to go to a foreign state to defend an action to collect on a contract. (*Rath Packing Co.* v. *Intercontinental Meat Trad., Inc., supra,* 181 N.W.2d 184, 189.) Otherwise, the effect of sustaining

jurisdiction over nonresident buyers would be to discourage interstate commerce. (*Ibid.* See also *Borg-Warner Acceptance Corp.* v. *Lovett & Tharpe, Inc., supra,* 786 F.2d 1055.)

The facts here are very similar to those in *Interdyne Co.* v. *SYS Computer Corp., supra,* 31 Cal.App.3d 508, and *Belmont Industries, Inc.* v. *Superior Court, supra,* 31 Cal.App.3d 281. Both involved transactions negotiated in interstate commerce and purchase orders executed by buyers outside of California. As here, the defendants in those cases maintained no economic presence in this state and did not do business here. The factor which Bay seeks to rely on, that it did not initiate the transaction, is no different than the *Belmont Industries* case where the defendant initially established contact also. (See *Belmont, supra,* 31 Cal.App.3d at p. 284.)

Similarly the *Tiffany Records* case, *supra,* held that foreign purchasers of products from a California resident could not be sued in California despite substantial purchases of phonograph records by out-of-state orders accepted in California, because the out-of-state defendants engaged only in out-of-state activities such as placing telephone calls and mailing orders. The activity was frequent, but still is not activity within the state constituting a jurisdictional basis. (*Tiffany, supra,* 276 Cal.App.2d at p. 619; see *Belmont Industries, supra,* 31 Cal.App.3d at p. 287.)

Also in the *Tiffany Records* case, *supra,* where jurisdiction was not found, the seller delivered the goods FOB California, whereas here the goods were shipped by Bay to Texas prepaid. (See *Tiffany Records Inc.* v. *M. B. Krupp Distributors, Inc., supra,* 276 Cal.App.2d 610, 617-618.)

The only indication of ongoing business to be done by petitioners in California is the aforesaid observation by Nyce that he looked forward to doing more business with Bay. That isolated generality is an insufficient basis for a finding of continuing business transactions or relationships as is required by the *Henry R. Jahn & Son* and *Rocklin* decisions. The facts here are that Bay was engaged in liquidating its classic films library; accordingly even if the above statement were more than a courtesy and truly expressed an intent to buy more films, still that business would necessarily be limited to purchasing what remained of Bay's inventory. No ongoing future commercial dealing could have been contemplated. Accordingly, the record lacks substantial evidence of ongoing business dealings past or potential such as would support jurisdiction over the out-of-state buyers (petitioners).

Put another way, the facts here do not show that petitioners reasonably should have foreseen the possibility of defending a suit in California. (See *Rocklin De Mexico, S.A.* v. *Superior Court, supra,* 157 Cal.App.3d at p. 98.) There are no facts tantamount to purposeful activity aimed at doing ongoing business with Bay in California. (See generally *Sibley* v. *Superior Court, supra,* 16 Cal.3d 442, 446-448.)

Bay argues that because it extended credit to defendants for their benefit in order to complete the transaction and received promissory notes payable in California, defendants have in soliciting this economic benefit for themselves engaged in purposeful conduct in California making the exercise of California jurisdiction over them fair. A long-standing credit arrangement between buyer and seller, as part of a continuous and substantial business relationship, might constitute part of the basis for jurisdiction over the out-of-state buyer. But no case holds that the mere extension of credit in a one-time transaction, without more, is in itself a sufficient basis. In a sense credit is extended in every transaction between buyer and seller where goods are shipped ahead of payment. And the extension of credit, realistically, is not only for the buyer's benefit but also benefits the seller when it makes consummation of the purchase possible. Accordingly the extension of credit in itself is not a sufficient basis for jurisdiction. The question is whether under all the facts the exercise of jurisdiction over the out-of-state buyer is fair, and no one fact normally can furnish the basis of jurisdiction. Here, the singularity of the business done is determinative, particularly in light of the general trend not to enforce jurisdiction against out-of-state buyers absent exceptional circumstances.

Even accepting all facts as resolved by the trier of fact in favor of Bay, the exercise of jurisdiction over this defendant is so unreasonable as to be beyond the court's powers. The jurisdictional contacts with the forum do not meet "minimum requirements inherent in the concept of 'fair play and substantial justice'." (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 477-478 [85 L.Ed.2d 528, 534-545, 105 S.Ct. 2174].)

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue commanding that petitioners' motion to quash service of summons be granted. Petitioners are prevailing parties in this action and shall have costs.

Elia, J., and Bamattre-Manoukian, J., concurred.