Filed 8/26/22  Barrows v. Superior Court CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KARISSA BARROWS,<br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br>    Respondent;<br><br>CHRISTOPHER AVELLONE,<br>    Real Party in Interest. | B315464<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV22573) |
| CHRISTOPHER AVELLONE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>KARISSA BARROWS,<br>    Defendant and Appellant. | B316206<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV22573) |

ORIGINAL PROCEEDINGS in mandate.  Theresa M. Traber, Judge.  Petition granted.

APPEAL from an order of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Order vacated and remanded with directions.

Robins Kaplan, Daniel L. Allender and Jessica Pettit for Petitioner and Defendant and Appellant.

No appearance for Respondent.

Johnson & Johnson, Neville L. Johnson, Douglas L. Johnson and Aleeza L. Marashlian for Real Party in Interest and Plaintiff and Respondent.

_____

**WRIT PETITION B315464**

Computer game designer Christopher Avellone sued Illinois resident Karissa Barrows for disparaging him on Twitter.  Barrows moved to quash service of summons for lack of personal jurisdiction, then petitioned for writ of mandate when the trial court denied her motion.  (Code Civ. Proc., § 418.10, subds. (a)(1), (c).)  We issued an order to show cause why Barrows should not be granted relief.

The trial court focused on harm Avellone allegedly suffered in California; however, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Walden v. Fiore* (2014) 571 U.S. 277, 290.)  When a nonresident posts on-line about a Californian, the evidence must

2

show "the posting focused on California and was expressly aimed or intentionally targeted at California." (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 26 (*Burdick*).)

Avellone did not carry his burden of proving Barrows expressly targeted California. The court lacks jurisdiction because Barrows does not have constitutionally sufficient minimum contacts with this state. We grant the petition and direct the court to enter an order quashing service of summons.

## FACTS

### 1. Claims Made in the Complaint

Avellone asserts four claims of libel per se arising from Barrows's tweets in June 2020.

First, replying to a tweet from a gaming Web site that promoted an interview with Avellone, Barrows wrote that she had "ZERO interest in anything from a man who spent so much time preying on young women (no age check), getting them drunk & taking them to hotel rooms, showing up to panels late & wasted if at all, & treating fans/fellow industry SO badly, he was blacklisted from at least 1 big con[vention]."

Second, Barrows reposted her message on her own Twitter account and added, "While we're at it, here's another man to add to the gaming industry predator garbage pile. Yesterday was the first time I said something publicly about this, and I'm done being silent, despite that fuckstick in the reply telling me to shut up. I WILL NOT."

Third, Barrows posted a series of tweets describing her claimed bad experience with Avellone and her observations of his interactions with other women. She wrote, "Chris Avellone is an abusive, abrasive, conniving sexual predator."

3

Fourth, Barrows tweeted, "Hey Avellone, since I know you've seen this now, spare us all the lies and the non-apologies. Either fess up to what you did to countless women and ACTUALLY apologize and atone, or shut the entire fuck up. And I didn't name certain entities FOR A FUCKING REASON. And yeah, I do hate you, Avellone. You assaulted & abused my friends. You made life hell for dozens of fellow industry. You've abused 'star' power to victimize women. You're playing this weak ass victim card for sympathy points now [that] your secret's out."

## 2. The Motion to Quash

Barrows moved to quash service of summons for lack of personal jurisdiction. She is a resident of Illinois, where she works, has spent most of her life, and is raising a child. A self-described "gaming fan," Barrows acknowledged tweeting the statements listed in the complaint, to support women who made similar statements about Avellone and to warn others to be careful around him. Her tweets were directed at people generally, not at California.

Avellone concedes the lack of general jurisdiction over nonresident Barrows but asserts there is specific jurisdiction because Barrows directed her tweets "*at* California." He offers a declaration (executed in Arkansas) from Jeffrey Johnson, appending a 2012 recording of an interview with Avellone and Johnson's written thoughts about Barrows, published in July 2021. A declaration (executed in North Carolina) from Dauna Bartley describes her interactions with Barrows in 2014 in Georgia and Nevada. Neither declaration relates to Barrows's contacts with California.

Avellone declares that he is "an established computer game writer" who resides in California and has worked for local game

4

developers. He states, "The computer gaming industry is worldwide, but many top studios, including many of my former employers, are based in California." Avellone worked for Electronic Arts, Inc. (EA), a California-based company, in 2018 and 2019. He does not aver that he was fired from EA because of Barrows's 2020 tweets.

Avellone met Barrows in 2012 at a gaming convention in Georgia. He denies having inappropriate sexual contact with Barrows at the 2012 event or at any time with other women. The parties maintained a friendly relationship on-line and at conventions until 2014.

Avellone declares that he has suffered severe harm to his personal and professional reputation from Barrows's tweets. Former employers distanced themselves and he has "become a pariah amongst former friends, acquaintances, and colleagues." His ability to earn an income from computer game development has "been virtually obliterated."

Avellone lists three EA employees who replied positively to Barrows's tweets—Patrick Weekes, John Epler, and Allan Schumacher. Barrows declares that she is friends with the three men and knows they live in Canada. She was unaware whether they have a business relationship with Avellone. Avellone has not disputed that the three reside in Canada.

## DISCUSSION

### 1. Standard of Review

"When a defendant moves to quash service for lack of personal jurisdiction, the plaintiff bears the burden of proving facts supporting the exercise of jurisdiction." (*Bader v. Avon Products, Inc.* (2020) 55 Cal.App.5th 186, 192–193.) "The plaintiff must come forward with affidavits and other competent

evidence to carry this burden and cannot simply rely on allegations in an unverified complaint. [Citation.] If the plaintiff meets this burden, 'it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable.' " (*ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 210 (*ViaView*).)

"On review, we apply the substantial evidence standard to the trial court's factual determinations regarding conflicting evidence. [Citation.] However, we independently review the trial court's conclusions regarding the legal significance of the facts. [Citation.] When the facts are undisputed, the issue of jurisdiction is purely a question of law." (*Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222.) " ' "The ultimate question whether jurisdiction is fair and reasonable under all of the circumstances, based on the facts which are undisputed and those resolved by the court in favor of the prevailing party, is a legal determination warranting our independent review." ' " (*ViaView, supra,* 1 Cal.App.5th at p. 210.) We independently review the court's interpretations and conclusions of law. (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387.)

### 2. General Principles of Personal Jurisdiction

California's long-arm statute allows the broadest possible exercise of jurisdiction. (*Stanley Consultants, Inc. v. Superior Court* (1978) 77 Cal.App.3d 444, 447.) Courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.)

California "may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable." (*Cornelison v. Chaney*

(1976) 16 Cal.3d 143, 147.)  If a defendant is not present in the state, due process requires certain minimum contacts so that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444–445; *Rocklin De Mexico, S. A. v. Superior Court* (1984) 157 Cal.App.3d 91, 94.) As a matter of fairness, a defendant cannot "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S.462, 475; *Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 254.)

### 3.   Exercise of Jurisdiction in Internet Cases

" '[A] person's act of placing information on the Internet' is not sufficient by itself to 'subject[ ] that person to personal jurisdiction in each State in which the information is accessed.' [Citation.]  Otherwise, a 'person placing information on the Internet would be subject to jurisdiction in every State,' and the traditional due process principles governing a State's jurisdiction over persons outside of its borders would be subverted." (*Young v. New Haven Advocate* (4th Cir. 2002) 315 F.3d 256, 263.)

In intentional tort cases, courts use an "effects test," weighing whether intentional conduct elsewhere gives rise to jurisdiction in California.  (*Calder v. Jones* (1984) 465 U.S. 783, 789.)  "[M]erely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test. [Citations.]  Instead, the plaintiff must also 'point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum.' " (*Pavlovich v. Superior Court*

7

(2002) 29 Cal.4th 262, 270–271 (*Pavlovich*).)  In *Pavlovich*, a defendant lacking any contacts with California was not subject to jurisdiction for posting source code on a Web site available to anyone with Internet access; even if he might have guessed that his conduct would affect electronics and computer industries centered in California, the foreseeability of causing harm in California did not suffice.  Plaintiff did not show California was targeted.  (*Id.* at pp. 273–278.)

### 4.  Avellone Did Not Prove the Existence of Personal Jurisdiction

A court may exercise jurisdiction only if a defendant " 'has purposefully availed himself or herself of forum benefits.' " (*Pavlovich, supra,* 29 Cal.4th at p. 269.)  Avellone did not show that Barrows availed herself of benefits in California by working, banking, transacting business, or owning property in this state. (*Id.* at pp. 273–274.)

There is no evidence Barrows expressly aimed her conduct at California, a state she does not mention in her tweets.  She initially replied to a tweet from a Web site promoting an interview with Avellone, but no admissible evidence shows the Web site is based in California.[1]  Even if we assume it is a California company, that is merely fortuitous, not a targeting of California.  One tweet mentions "the gaming industry predator garbage pile," which may include people all over the world.  As Avellone declares, "the computer gaming industry is worldwide."

---

[1] Avellone's complaint alleges that the Web site is based in California, but "an unverified complaint has no evidentiary value in determination of personal jurisdiction."  (*Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 710.)

8

Three people Avellone mentions as significant—Weekes, Epler, and Schumacher—are residents of Canada. Their response shows Barrows's tweets reached an international audience. Avellone offers declarations from proponents in Arkansas and North Carolina, underscoring the dispersion of the audience. "The readers of the allegedly defamatory [Twitter] posting 'most likely would be spread all around the country—maybe even around the world—and not necessarily in the [California] forum.' " (*Burdick, supra,* 233 Cal.App.4th at p. 27.)

There is no contemporary evidence that Barrows knew Avellone lives or works in California. The court cited Avellone's exhibit 11, a June 2014 tweet in which Barrows congratulates Avellone on his employment at a company called Obsidian. A six-year-old tweet does not prove Barrows knows Obsidian is a California company, nor does it prove she knew where Avellone lived or worked in 2020. Similarly, a transcript of a 2012 interview, in which Avellone says he is in California (and Barrows says she does not live here) is not proof she knew of Avellone's residence in 2020. The record does not show any contact between the two since 2014.

Even if we assume Barrows knew that Avellone lives in California and could be harmed by her tweets, "knowledge that the posting could harm California residents is not enough in itself to support jurisdiction" because there is no "substantial connection" between Barrows and California. (*Burdick, supra,* 233 Cal.App.4th at p. 25; *Pavlovich, supra,* 29 Cal.4th at p. 277 [foreseeability of causing harm here "is not enough" to establish jurisdiction].) "[M]erely posting on the Internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts" when,

9

as here, there is no evidence showing that defendant expressly aimed at or targeted California.  (*Burdick*, at p. 25.)

"[T]he record before us shows the allegedly defamatory posting . . . was aimed at California 'only in the sense that it could be accessed by [California] residents (along with the rest of the world).' " (*Burdick, supra,* 233 Cal.App.4th at p. 29.) Barrows's random, fortuitous, or attenuated contact with California does not support the exercise of personal jurisdiction. (*Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at p. 475.)

### 5.  Avellone Relies on Cases that Are Factually Distinguishable and Inapposite

The paucity of evidence linking Barrows to California starkly contrasts with the substantial evidence presented in cases that Avellone cites in support of his position.

In *Calder v. Jones, supra,* 465 U.S. 783, the National Enquirer, a Florida corporation, published a story about an actress.  The reporter traveled to California on business and made phone calls to California to write the story, which concerned the activities of a California resident, impugned the professionalism of an entertainer whose career was centered in California, was drawn from California sources, and caused damage in California; the corporation sold 600,000 copies of the National Enquirer in California, nearly twice the circulation in any other state.  (*Id.* at pp. 785, 788–789.)  The *Calder* defendants "expressly aimed" their intentional conduct at California knowing the National Enquirer had its largest circulation in California, where the article would "have a potentially devastating impact." (*Id.* at pp. 789–790.)

*Calder* is distinguishable.  Barrows met Avellone in Georgia.  There is no evidence she drew her information from

California sources, marketed a newspaper here, or reached a predominantly California audience. Her conduct was not aimed at California.

Avellone cites *Yue v. Yang* (2021) 62 Cal.App.5th 539. Yang, a Canadian, posted on a Chinese language Web site based in California, with local bloggers and readers; he "mentioned plaintiff by name and threatened to harm him in California." Yang wrote that he " 'arrived in California' " and urged his " 'collaborators' " to come to a meeting in San Francisco. (*Id.* at pp. 543, 548–549.) Jurisdiction existed because Yang "repeatedly referred to California, suggested California criminal liability, and threatened a California visit." Plaintiff offered uncontradicted evidence that the Web site "had a California audience, and that California residents read the allegedly defamatory postings." (*Id.* at p. 549.) By emphasizing the California connection and Yang's "awareness that Californians would be in the audience," plaintiff showed purposeful availment. (*Ibid.*; *Zehia v. Superior Court* (2020) 45 Cal.App.5th 543, 557 [defendant's "*private* social media messages aimed exclusively at a California audience"].)

Unlike the defendant in *Yue v. Yang, supra,* 62 Cal.App.5th 539, Barrows did not threaten to harm Avellone in California or target her posts at "collaborators" here. Nor did she post private messages aimed exclusively at a California audience. At most, we are certain that three people in Canada read and replied to Barrows's tweets.

Avellone cites a recent case, *Burri Law PA v. Skurla* (9th Cir. 2022) 35 F.4th 1207. In *Burri*, a Pennsylvania resident defamed a lawyer for the purpose of interfering with an Arizona lawsuit—through e-mails, phone calls, voicemails, letters, and in-person communications with Phoenix residents—to convince

11

them to terminate an Arizona employment contract with the lawyer. The court wrote, "such acts target the forum state itself and . . . are likely to cause harm in Arizona." (*Id.* at p. 1213.) The defendant made the statements " 'for the very purpose of having their consequences felt in the forum state.' " (*Id.* at p. 1215.) *Burri* is not germane. It involves pinpoint communications directed at Arizonans, for the express purpose of interfering with an Arizona contract, not posts on Twitter broadcast to the world.

### APPEAL B316206

Karissa Barrows appeals the superior court's order, entered September 28, 2021, denying her special motion to strike Christopher Avellone's complaint under California's anti-SLAPP statute, Code of Civil Procedure section 425.16. An order denying an anti-SLAPP motion is directly appealable. (Code Civ. Proc., §§ 425.16, subd. (i) & 904.1, subd. (a)(13).) Given our decision on the writ petition in B315464 above, the appeal is necessarily decided and the order denying Barrows's anti-SLAPP motion must be vacated as the superior court lacked personal jurisdiction to hear Avellone's defamation action against Barrows in the first instance.

12

## DISPOSITION

Barrows's petition for a writ of mandate in B315464 is granted. The cause is remanded to the trial court with directions to enter an order quashing service of summons.

The order denying the anti-SLAPP motion in B316206 is vacated and the matter is remanded to the trial court with directions to dismiss the action against Barrows.

Barrows shall recover her costs from Avellone in the mandate proceeding and on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.